UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| TERRI L. SRCH, an individual, ) | |
| ) | |
| Plaintiff, ) | 03:04-CV-0549-LRH (RAM) |
| ) | |
| vs. ) | |
| ) | ORDER |
| 3M COMPANY, a Minnesota corporation, ) | |
| ) | |
| Defendant. ) | |

Presently before this Court is a motion for summary judgment (#16[1]) brought by Defendant 3M Company. Plaintiff Terri Srch has submitted an opposition (#21), to which Defendant subsequently replied (#25).

**FACTUAL AND PROCEDURAL BACKGROUND**

This case involves a single breach of contract claim[2] between a company and one of its sales associates. In 2001, Defendant began a sales incentive program aimed at increasing the sales of its Scotchlite Reflective Material product as well as providing security that its orders would actually be filled. Accordingly, Defendant provided its sales associates with a bonus incentive for procuring product specifications which read:

> For each new specification written in 2001 by a manufacturer (footwear, apparel or accessory), additional payments will be made to the responsible sales representative. (Customer approved specifications must come from an account headquarter, be documented on account form/letterhead, be submitted to and

---

[1] References to (# XX) refer to the Court's docket.

[2] While other claims were initially brought in the complaint, the parties have subsequently stipulated to dismiss all but the breach of contract claim now before the court (#15).

>     agreed to by the Sales Manager to qualify) Payments will be made quarterly and combined with Special Objective Payments.
>
>     1. New 3M™ Scotchlite™ Reflective Material specification (developed and generated in 2001) = $250 each
>     2. Competitor specification changed to Scotchlite reflective material (includes any carried over models/styles in 2001) = $500 each

In reliance on this bonus system, Plaintiff brought forth a list of 1,213 products made by Nike (743 shoes) and Adidas (470 shoes) for which she sought compensation under the plan. The lists provided to Defendant noted each individual shoe and the fact that Defendant's Scotchlite product was used in the manufacture of that particular shoe.

Defendant's sales manager received the lists. After considering the information provided, Defendant's sales manager concluded that none of the lists satisfied the criteria required by the incentive program. However, a payment of $6,200 was made to Plaintiff which, depending on the evidence viewed, was either a payment of $50 each for 124 of the Nike shoes or a flat payment with a compensation breakdown of 80% for the Nike shoes and 20% for the Adidas shoes. Regardless of the breakdown, Plaintiff felt she should be paid at a rate of $250 for the entire 1,213 products, an amount of $303,250. When payment was not forthcoming, Plaintiff filed the pending lawsuit.

Defendant has moved for summary judgment claiming that Plaintiff did not fulfill the requirements necessary to earn the bonus payments for the 1,213 products she provided. Plaintiff contends that the contract is ambiguous and that an issue of fact exists as to whether it was properly performed.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148,

1  1154 (9th Cir. 2001).

2        The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "'sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). *See also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett*, 477 U.S. at 325.

11        In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**DISCUSSION**

23        The present case involves a contract that was entered into in Minnesota by a company headquartered and incorporated in Minnesota and one of its employees. The determination whether payment was due under the contract apparently occurred in Minnesota as well. As such, the parties have both relied on Minnesota law in the interpretation of the contract. The Court has reviewed Nevada's conflict of laws jurisprudence, and finds that Minnesota law should in fact govern the contract involved in this case. *See Sotirakis v. United Serv. Auto. Ass'n*, 106 Nev.

1   123, 126 (1990) (noting the most significant contacts to consider when determining which state's
2   laws should apply to a contract include the place of negotiation and contracting, the place of
3   performance, and the domicile, residence, place of incorporation and place of business of the
4   parties).

5       Neither party has seriously challenged the fact that a contract exists in this matter.  Thus,
6   although the Court would find a unilateral employment contract under Minnesota law, *see Pine*
7   *River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983) (finding unilateral contract created
8   when employee handbook was provided to employees and citing to at least one case where
9   employer's promise of a bonus was held enforceable), the Court does not make such a particular
10  finding and proceeds in this matter simply on the assumption that a contract exists.

11      Under Minnesota law, the Court's role in interpreting contracts is to "ascertain and give
12  effect to the intention of the parties." *Metro. Sports Facilities v. General Mills, Inc.*, 470 N.W.2d
13  118, 122-23 (Minn. 1991).  The contract is viewed as a whole, and therefore "must be interpreted
14  in a way that gives all of its provisions meaning." *Current Tech. Concepts, Inc. v. Irie Enters.,*
15  *Inc.*, 530 N.W.2d 539, 543 (Minn. 1995) (hereafter "Current Tech.").  However, while giving
16  meaning to all of the contracts provisions, the Court must avoid an interpretation that would lead
17  to a harsh and absurd result.  *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390,
18  394 (Minn. 1998).

19      While the primary goal is to determine and enforce the parties' intent, where "the parties
20  express their intent in unambiguous words, those words are to be given their plain and ordinary
21  meaning." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn.
22  2003).  However, the contract should not be viewed in isolation.  Instead, the intent of the parties
23  is ascertained "from a process of synthesis in which the words and phrases are given a meaning
24  in accordance with the obvious purpose of the contract . . . as a whole." *Id.* at 324 (quoting
25  *Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn. 1979)).

26      Finally, a contract is determined to be ambiguous when "its language is reasonably
27  susceptible of more than one interpretation." *Current Tech.*, 530 N.W.2d at 543.  Where an
28  ambiguous contract exists, "it must be construed against its drafter." *Id.*  However, a party

1  cannot alter unequivocal language of a contract with speculation of an unexpressed intent of the
2  parties.  The terms of a contract will not be considered ambiguous solely because the parties
3  dispute their proper interpretation.  *See Knudsen v. Transp. Leasing/Contract, Inc.*, 672 N.W.2d
4  221, 223 (Minn.App. 2003), *review denied* (Minn. Feb. 25, 2004); *Metro. Sports Facilities*, 470
5  N.W.2d at 123.
6        Plaintiff contends that the sales incentive contract at issue is ambiguous in its terms.
7  Specifically, Plaintiff argues the terms "new," "specification," and "developed and generated" are
8  not self-defining and are therefore ambiguous as each party has a different understanding of the
9  terms.  Plaintiff defines "new" as any specification Defendant did not have before receiving it
10 from Plaintiff.  Plaintiff states that "specification" is ambiguous because it is not defined in the
11 agreement.  She goes on to argue that the lists she provided "is what she asked for, so it is what
12 the customers understood to constitute their 'specifications'."  (#21 at 4).  In essence Plaintiff
13 contends her lists qualify as specifications under the following reasoning: "If the goal was to
14 identify product into which 3M product was to go, then this list, regardless of what one calls it,
15 passed muster." *Id.*  Finally, Plaintiff defines the term "developed and generated" to simply
16 mean that the actual list was produced in 2001 and disagrees with Defendant's interpretation that
17 it means the new specification must be developed and generated in 2001.  This is so, according to
18 Plaintiff, because "it is virtually impossible to obtain newly written specifications for 2001
19 product in the first quarters of 2001." (#21 at 11).
20       The court has reviewed the relevant documents and arguments and cannot agree with
21 Plaintiff's assessment that the contract is ambiguous.  As discussed below, the contract is
22 unambiguous in its requirements and Plaintiff has not provided evidence to rebut Defendant's
23 showing of a lack of evidence to prove her case.
24       The court begins by considering the contract as a whole to determine whether there is an
25 obvious purpose to the contract.  It is apparent from such a holistic reading that the obvious
26 purpose of the sales incentive contract is to bring in new business by convincing clients to
27 guarantee that Defendant's product will be used in the client's specific manufactured products.
28 By placing its product in the client's specifications, Defendant ensures that its product, and only

1 that product, will be used when the new manufactured products are actually produced. Such a
2 reading is supported by the dual payment clauses contained in the contract. The first clause pays
3 $250 for new specifications developed and generated in 2001. The second clause pays $500 for
4 convincing a client to change a specification from a competitor's brand to Defendant's brand.
5 The first clause only pays for specifications developed and generated in 2001, while the second
6 clause allows for carried over models or styles that are changed in 2001. As such, the obvious
7 purpose of the contract is to encourage salespersons in 2001 to complete new sales which will
8 guarantee Defendant's product will be used and specifically accounted for based on its inclusion
9 in the manufacturer's specifications. With this in mind, the court turns to considering the actual
10 terms of the contract.
11       The term "new," when considered under the obvious purpose of the contract, cannot be
12 read to simply mean any specification the company did not have before, as such a reading would
13 lead to the absurd result of allowing a payment for sales completed in previous years that did not
14 increase the current sales of the company. Thus, should Plaintiff's interpretation be accepted,
15 Plaintiff would be entitled to payment for, as an example, a shoe created in 1999 for which the
16 sale of Defendant's product occurred in 1999 simply by having the client send over its previously
17 created specification. There would be a windfall to Plaintiff for a negligible at best gain for
18 Defendant. As such, the term "new" is unambiguous and means any specification that newly
19 incorporates Defendant's product in 2001.
20       The term "specification" is also not ambiguous. A specification is "a detailed precise
21 presentation of something or of a plan or proposal for something." Merriam-Webster's
22 Collegiate Dictionary 1125 (10th Ed. 2001). As such, a specification as contemplated by the
23 plain language of the contract would be a detailed and precise plan for the manufacture of a
24 client's product. There is no other reasonable conclusion to be drawn from the language of the
25 contract.
26       Finally, the term "developed and generated" also has a clear definition to be gleaned from
27 the purpose of the contract, making it unambiguous as well. As with the term "new," a reading
28 which ignores the obvious purpose of the contract to stimulate new sales would lead to an absurd

1  result.  Reading the term "developed and generated" to simply mean the list was created in 2001
2  leaves open the possibility that a prior product, for which a sale was already realized by
3  Defendant, would fall within the compensation guidelines.  As with the term "new" such a
4  reading would provide a potential windfall to Plaintiff while providing only a negligible gain to
5  Defendant.  Accordingly, the only proper interpretation of the term requires that, in the case of
6  new specifications, the specification itself be both developed, as in created, and generated, as in
7  produced, in 2001.  The alleged difficulty in obtaining new specifications for 2001 products in
8  the early quarters of 2001 is not a hindrance to such a reading, but rather a help, as the difficulty
9  in obtaining such specifications is an excellent reason to reward salespersons above and beyond
10 their normal compensation for obtaining them.

11     With the contract deemed unambiguous and properly interpreted, the court turns to
12 whether an issue of fact exists regarding Plaintiff's performance of the contract.  The court will
13 consider the lists provided by Plaintiff under the interpreted terms of the contract.  As Plaintiff
14 was required to meet each term of the contract to warrant payment, failure to meet any term
15 results in a proper finding of summary judgment for Defendant.

16     The first question to consider is whether the information contained in the lists qualifies as
17 specifications.  The court deems, as a matter of law, that they do not.  As defined, a specification
18 is a specific and detailed presentation on how to manufacture the end product, in this case a shoe.
19 The information provided to Defendant merely listed the shoes in which Defendant's product
20 was used and noted the specific product of Defendant's that was to be used in each shoe.  The
21 lists did not provide the amount of Defendant's product to be used, any of the other materials
22 used in the creation of the shoes involved, or any details relating to the manufacture of the shoe
23 itself.  As such, they do not meet the definition of specification contained in the sales incentive
24 contract.  Accordingly, summary judgment is appropriate in this matter.

25     However, the term developed and generated[3] is also not met by the evidence when it

---

[3] Plaintiff and Defendant have bickered over whether the term "written" or "developed
and generated" should be the proper term for the court to consider on this issue.  While the court

1  comes to the lists.  Defendant has pointed out that all the evidence that exists regarding when any
2  of the specifications were generated is the hearsay statement of one of Nike's employees (#25 at
3  7) which only relates to 124 of the Nike shoes.  Plaintiff has been unable to point to any
4  evidence, aside from the hearsay statement, which shows any of the specifications were
5  developed or generated in 2001.  When the movant demonstrates a lack of evidence exists, the
6  burden of avoiding summary judgment shifts to the non-moving party to point to facts supported
7  by the record which demonstrate a genuine issue of material fact.  *Reese*, 208 F.3d at 738 (9th
8  Cir. 2000).  Plaintiff makes the argument that the lists were developed and generated in 2001
9  because they were provided to Plaintiff by her clients in 2001.  However, this argument misses
10 the fact that it is the underlying specifications which must be both developed and generated in
11 2001 to qualify.  As such, summary judgment is also appropriate as to all but the specific subset
12 of 124 Nike shoes on the ground that Plaintiff can point to no evidence demonstrating those
13 products' specifications were developed and generated in 2001.
14      Regarding the specific subset of 124 Nike shoes, Defendant argues there is no competent
15 evidence that the underlying specifications were written in 2001.  Defendant points out that
16 Plaintiff's knowledge of when the specifications were written is based on a hearsay statement
17 alone.  A trial court can only consider admissible evidence in ruling on a motion for summary
18 judgment.  *See* Fed.R.Civ.P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181
19 (9th Cir. 1988); *see also Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (finding
20 abuse of discretion when trial court considered hearsay document on summary judgment).
21 Plaintiff does not deny the underlying statement is hearsay, but argues it should be admitted as a
22 present sense impression or under the catch-all clause of the hearsay rules.  The court has
23 reviewed Plaintiff's arguments and would find, if it were necessary, that the hearsay statement
24 made to support the proposition that the 124 Nike products had been developed and generated in

---

26 has chosen to focus on the term developed and generated, it considers Defendant's arguments
27 over the term written to apply equally to the term developed and generated as the crux of the
   argument is simply that Plaintiff cannot prove when the specifications for the products contained
28 in the lists were created.

2001 would be inadmissible. However, the court need not fully discuss the issue as the 124 Nike products have already failed as specifications, making summary judgment appropriate.

## CONCLUSION

It is therefore ORDERED that the Defendant's Motion for Summary Judgment (#16) is GRANTED.

The clerk shall enter judgment accordingly.

DATED this 9th day of January, 2006.

_____
LARRY R. HICKS
United States District Judge